UNITED STATES DISTRICT COURT
for the
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| Armando Casaca,<br>    Plaintiff<br><br>V.<br><br>Brava Fishing Corp.,<br>    Defendant | Civil Action<br><br>No. 1:12-cv-11901-RGS |

**PLAINTIFF'S OPPOSITION TO DEFENDANT BRAVA FISHING CORP.'S EMERGENCY MOTION FOR A PROTECTIVE ORDER AND MOTION IN LIMINE TO PRECLUDE PLAINTIFF'S EXPERT WITNESSES**

Now comes the Plaintiff by and through his attorneys and submits Plaintiff's opposition to Defendant Brava Fishing Corp.'s Emergency Motion for a Protective Order and Motion in Limine to Preclude Plaintiff's Expert Witnesses. As grounds, Plaintiff states the following:

**FACTS**

This action arises out of injury to Plaintiff Armando Casaca, age 55 at time injury, who was injured on while employed as a deck hand on the F/V MY WAY. While repairing the net on the F/V MY WAY, Mr. Casaca permanently injured his right foot and is disabled from doing any type of work.

    **a.    Discovery Deadlines**

Suit was filed in this action on October 11, 2012.

This Honorable Court adopted the parties Joint Scheduling Statement on December 10, 2012. *Docket Entry # 11*. On July 31, 2013, a Joint Motion to Extend Discovery Deadlines was

filed. *Docket Entry # 12*. On August 6, 2013, this Honorable Court approved the motion. Pursuant to the order, discovery closed on September 30, 2013, Plaintiff's expert's were due on October 31, 2013 and Defendant's experts were due November 29, 2013. *Docket Entry #13*.

### b. Plaintiff's Deposition

Defendant noticed Plaintiff's deposition on July 19, 2013 for August 21, 2013. *Exhibit A*. Due to the fact that Plaintiff's counsel was unavailable that day, in an email dated, August 19, 2013, Plaintiff requested that the deposition be rescheduled to a new date of August 27, 2013. *Exhibit B.* On August 28, 2103, the deposition of Mr. Casaca occurred. *Exhibit V*.

### c. F.R.Civ.P. 30(b)(6) deposition of the Defendant and Capt. Paulino

On August 12, 2013, Plaintiff noticed a F.R.Civ.P. 30(b)(6) deposition of the Defendant. *Exhibit C*. The deposition was rescheduled based on Defense Attorney Ward's request because he indicated he would be unable to prepare the deponent for the deposition. *Exhibit D.*

Plaintiff's counsel then on September 6, 2013 rescheduled the F.R.Civ.P. 30(b)(6) to September 17, 2014. *Exhibit E.* On September 12, 2013, Defense Attorney Ward requested for a second time that the deposition be rescheduled as he was unavailable. *Exhibit F*. Plaintiff complied and took the deposition off. Id. It was further agreed at this time that the discovery deadline of September 30, 2013 would be extended. Id.

On October 7, 2013, Plaintiff's counsel requested from Attorney Ward for a new date for the F.R.Civ.P. 30(b)(6) to occur. *Exhibit G.* After an exchange back and forth between Attorney Latti and Attorney Ward and Attorney Ward asking if deposition could be done in New Bedford since the F.R.Civ.P. 30(b)(6) resided there, Attorney Latti indicated " I would like to do the deposition in Boston; however, if it means getting the deposition done sooner so we can finish discovery, I will do it in New Bedford." *Exhibit H*. In a further exchange that day, Defendant

2

agreed to produce Captain Paulino of the F/V MY WAY and Plaintiff's counsel agreed to do both the F.R.Civ.P. 30(b)(6) and Captain's depositions in New Bedford, Massachusetts. *Exhibit I*.

Since no dates were provided by Attorney Ward, on October 30, 2013, Attorney Latti requested from Attorney Ward dates for the F.R.Civ.P. 30(b)(6) and captain's deposition and requested the Tuesday and Wednesday of the following week. *Exhibit J*. In response, Attorney Ward responded next week was not good for Defendant's deposition and requested the week of November 11, 2013 for the depositions. *Exhibit K*.

At this time, since discovery was closing, Attorney Latti requested that since depositions had not occurred that the parties agree to extend discovery until depositions and transcripts are received and then Defendant will have 30 days after receipt of Plaintiff's expert reports to produce any reports. *Exhibit L*. In a responding email, Attorney Ward said he had "no problem extending the expert deadline to allow for time to do the remaining discovery." *Exhibit M*. Attorney Ward also indicated he would check on November 12 to see if it was available for the Captain and F.R.Civ.P. 30(b)(6) deposition and get back to Plaintiff's counsel with dates. Id.

When no dates were provided by Defense counsel, on December 31, 2013, Attorney Latti requested dates so that "we can get going on this and then be able to disclose our experts." *Exhibit N*. When Attorney Latti did not receive any response, on January 8, 2014, another email was sent to Attorney Ward, requesting dates when Captain Paulino and F.R.Civ.P. 30(b)(6) deponent were available. *Exhibit O*. Over a week later, Attorney Ward responded and indicated first week of February the two deponents might be available and Attorney Latti responded that February 7, 2014 worked for the Plaintiff. *Exhibit P, Q*. On January 21, 2014, Attorney Ward responded that in regards to the dates he would have to check with Mr. Regan as Attorney Ward

indicated for the first time that Mr. Regan would be covering the F.R.Civ.P. 30(b)(6) and the captain's deposition. *Exhibit R*.

On January 23, 2014, this Court noticed a trial date of February 18, 2014.

After phone conversations with Attorney. Regan, Attorney Latti was informed on Friday, January 24, 2014, that the F.R.Civ.P. 30(b)(6) and the captain were only available on Monday, January 24 or 25th and that the Captain would be unavailable after that as the F/V MY Way was leaving for North Carolina and would be fluke fishing for two months. Even though Attorney Latti was unavailable on both January 24th and 25th, since it was the only two days provided after 6 months of requesting dates and if the deponents were not deposed the Captain may not have been available until the end of March, Attorney Latti planned to have Attorney Anderson[1] from her office conduct the depositions.

On January 28, 2014, Attorney Anderson the F.R.Civ.P. 30(b)(6) deposition and Captain Paulino's deposition occurred. Despite Defendant stating Capt. Paulino was available for his deposition, his deposition was not finished as Capt. Paulino left for a doctor's appointment and the deposition was suspended. *Exhibit T*.

Attorney Latti received the F.R.Civ.P. 30(b)(6) deposition and Captain Paulino's on February 11, 2014. *Exhibit AA*.

    **d.    Disclosure of Treating Physicians in Answers to Interrogatories and Plaintiff's Designation**

On August 27, 2013, in response to Defendant's Interrogatory #25 which asked "list each and every person you may call as an expert witness at trial…", Plaintiff identified five Doctors, Dr. Katz, Dr. Silva, Dr. VonErtfelda, Dr. Chow, Dr. Theodore and Dr. Cros. *Exhibit W*.

---

[1] Attorney Anderson is not even an attorney of record in this case.

In accordance with Attorney Latti's agreement with Attorney Ward, on March 6, 2014, Plaintiff's counsel emailed Plaintiff's designation of treating physicians[2]. The disclosure was provided within 30 days of receiving the transcripts. The disclosure identifies in detail the testimony and opinions of Plaintiff's treating physicians.

### e. Defendant's Responses to Discovery 14 months Late

On November 16, 2012, Plaintiff forwarded Interrogatories and Request for Production of Documents to Defendant. *Exhibit U*. Defendant provided responses to discovery, over 13 months late on January 27, 2014, one day before Plaintiff conducting a F.R.Civ.P. 30(b)(6) deposition of the Defendant and the Captain Paulino's deposition. *Exhibit V*.

### f. Local Rule conference on March 13, 2104

On March 13, 2014, Attorney Regan called pursuant to the Local Rules to discuss his motion to disqualify the experts on the grounds that Plaintiff did not provide expert reports. At no time did Attorney Regan ever state that a grounds for disqualification of the doctors was on grounds that the disclosure was untimely. During the conversation, Attorney Latti asked if he was going to do an IME and Attorney Regan said he did not know, he questioned whether he would be able to get an IME and that he would have to discuss with Attorney Ward who worked up the case. Attorney Latti indicated to Attorney Regan that she had no problem with Attorney Regan doing an IME at anytime and would produce the Plaintiff anywhere. Attorney Latti confirmed her conversation with Mr. Regan in an email on March 17, 2014. *Exhibit Z.* Five days later after the conference, Defendant files the herewith Motion seeking emergency relief.

---

[2] The designation is Exhibit B in Defendant's Motion.

5

## II. Plaintiff's Disclosure of Treating Physicians Was Not Untimely

Attorney Latti and Attorney Ward had an agreement to extend discovery beyond the September 30, 2103 court deadline and beyond the October 31, 2014 expert deadline and to allow the Plaintiff to disclose experts after the F.R.Civ.P. 30(b)(6) deposition and receipt of the transcripts and then Defendant would disclose their experts 30 days thereafter. *Exhibit G, L and M*. In *Exhibit G* and *Exhibit M*, Attorney Ward specifically agrees to extend with words of "I have no problem extending discovery" to "I have no problem extending the expert deadline to allow for time to do the remaining discovery." Despite these emails confirming the extension of discovery and expert designations, at no time in Defendant's Motion does he ever acknowledge any extension of discovery. In fact, the motion is carefully drafted and the Defendant goes out of his way to not mention any agreements, extensions by the parties regarding discovery and expert deadlines or mentioning that discovery occurred beyond the date set by the Court.

Over the fifteen plus years that Attorney Latti has worked with Attorney Regan's office, the attorneys have extended discovery and expert reports on numerous cases and the attorneys have always stood by their agreement[3]. As in the past, Attorney Latti relied on Attorney Ward's agreement to extend discovery and the expert deadline. At no time until the filing of the Defendant's Motion did Attorney Latti ever think Plaintiff's Disclosure of Treating Physicians was untimely. Attorney Regan never even mentioned untimeliness in his motion conference on March 13, 2014. Upon receipt of the motion yesterday, Attorney Latti wrote Attorney Regan requesting that he withdraw his arguments regarding timeliness as they misrepresented crucial

---

[3] Plaintiff's counsel acknowledges in light of Attorney Ward going back on his word regarding extending discovery and expert designations, it would have been better to have obtained the Court's approval rather than the parties simply working through it and agreeing to it. However, Plaintiff's counsel operated on the practice that when an attorney gives you his word, particularly in writing, it is his word.

6

facts to this Court. *Exhibit X*. As of filing this motion, Attorney Regan's whose name is on the motion, has not filed anything with the Court striking his argument of timeliness.

It appears that Defendant's Motion is simply an attempt to gain a tactical advantage for trial as since the Court ordered deadline September 30 and October 31, 2103 passed, not once did Defendant ever indicate in response to Plaintiff's emails that discovery was closed or expert designation pass. In response to Attorney Latti's December 31, 2013 email which requested dates for F.R.Civ.P. 30(b)(6) and Capt. Paulino deposition and mentioned that Plaintiff wanted to get the depositions done as soon as possible so experts could be disclosed, Defendant never responded and stated discovery was closed nor was it too late to designate experts. *Exhibit N*. If Defendant had, Plaintiff would have certainly taken relief with the Court to enforce the September 12, 2013 and October 31, 2013 emails. *Exhibit F, L* and *M*.

For over 6 months, the Plaintiff tried extensively to obtain a F.R.Civ.P.30(b)6 deposition. No matter what date Attorney Latti choose or the number of times requesting dates, Defendant would not produce the F.R.Civ.P.30(b)6 deponent. Attorney Ward was always not available for the depositions; however, when the time came time for the F.R.Civ.P.30(b)6 and the Captain's deposition, Attorney Ward indicated that Attorney Regan would be covering it. It was not until the Court noticed the trial for February 18th, that the Plaintiff finally got dates for depositions.

The Plaintiff's delay in producing the Designation three weeks before trial was not due to Plaintiff's actions, it was due to the Defendant's continuous action in failing to produce the deponents. If the Defendant wanted the designations sooner, it should have produced the deponents on the numerous times Plaintiff requested. It was Defendant who was "dilatory" not the Plaintiff. Plaintiff disclosed the information within the terms of the agreement.

Any argument that the Defendant has been prejudiced is unwarranted based on Defendant's actions. Since, August 27, 2014, Defendant received notice in answer to Interrogatory #25 which asked to identify Plaintiff's experts, that it intended to call Plaintiff's numerous treating physicians. In regards to the timing of the designation, Plaintiff provided its designation in accordance with Attorney Ward and Attorney Latti's agreement. Defendant has misrepresented to the Court in its motion, particularly when it makes statement to the court that "the Plaintiff was well aware of his obligation to disclose expert witnesses on before October 31, 2013 and failed to do so." With all the emails exchanged regarding extending discovery and expert reports and taking depositions, it is hard to reconcile that an attorney will simply forget the extension.

Based on the foregoing, this Honorable Court should find that Plaintiff's Designation are timely and allow the doctors to testify.

**III. Expert Reports are not Required by Plaintiff's Treating Physicians**

The First Circuit, District Courts, the Advisory Committee Notes to Fed.R.Civ.P. 26(a)(2), and the 2010 amendments to Fed.R.Civ.P. 26(a)(2) specifically indicate that treating physicians do not have to provide expert reports.

The Advisory Committee Notes for the 1993 amendment illustrate how the drafters specifically intended to exclude treating physicians from Rule 26's requirement to provide expert reports because treating physicians are not considered to be "specially employed" or retained experts. The Advisory Committee Notes state:

> the requirement of a written report in paragraph (2)(B), however, **applies only to those experts who are retained or specifically employed** to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony. **A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written**

> **report.** Rule 26(a)(2)(B) Advisory Committee Notes for the 1993 Amendment (emphasis added).

The amendments to Rule 26 that took effect on December 1, 2010, further clarifies the rule that treating physicians may offer expert opinions at trial, without the requirement of providing a formal Rule 26 expert report. The Advisory Committee Notes for the December 1, 2010, amendments state:

> A witness who is not required to provide a report under Rule 26(a)(2)(B) may both testify as a fact witness and also provide expert testimony under Evidence Rule 702, 703 or 705. Frequent examples included physicians or other health care professionals and employees of a party who do not regularly provide expert testimony.

In the First Circuit decision in <u>Downey v. Bob's Discount Furniture Holdings, Inc.</u>, 633 F.3d 1, (1st Cir. 2011) dealt with the issue was whether an expert that is not specifically retained or employed for the purpose of testifying must comply with the written report disclosure requirements of Fed.R.Civ.P. 26(a)(2)(B) when the expert will be offering opinions on causation. <u>Downey</u>, like this case, was a personal injury case. <u>Downey</u> involved bed bugs in a bed frame purchased from the defendant's store. The expert in <u>Downey</u> was an exterminator that examined the bed frame soon after an outbreak of bedbugs. The issue before the Court of Appeals was whether the district court erred in excluding the exterminator's opinion testimony on causation because he did not provide a Rule 26(a)(2)B) report.

<u>Downey</u> held that expert reports are not required from an expert that is not specifically retained or employed for the purposes of testifying when they are offering opinions on causation. Specifically, the Court held:

> Interpreting the words "retained or specifically employed" in a common-sense manner, consistent with their plain meaning, we conclude that as long as an expert was not retained or specially employed in connection with the litigation, **and his opinion about causation is premised on personal knowledge and observations**

> **made in the course of treatment, no report is required under the terms of Rule 26(a)(2)(B)**.

Downey, supra at 7 (emphasis added), citing, among other cases, Garcia v. City of Springfield Police Department, 230 F.R.D. 247, 249 (D. Mass. 2005), and Sprague v. Liberty Mutual Insurance Co., 177 F.R.D. 78, 81 (D.N.H. 1998), See also, Talavera v. Municipality of San Sebastian, 865 F. Supp.2d 150, 152-53 (D.P.R. 2011).

Downey held that, because the exterminator "formed his opinion about causation (that is about the defendant's responsibility for the infestation) based on his personal knowledge and information gleaned in the course of his initial inspection and related efforts to remediate the problem, . . . the report requirement of Rule 26(a)(2)(B) did not pertain to [the exterminator's] causation opinion, . . . and the district court, therefore, abused its discretion [i.e., committed reversible error] in excluding the proffered testimony on this ground." Downey, supra at 8(citations and internal punctuation omitted).

Downey opinion only reinforced the established precedent in this Circuit. The law of this District and of this Circuit is that, "**so long as the expert care-provider's testimony about causation and prognosis is based on personal knowledge and on observations obtained during the course of care and treatment, and he or she was not specially retained in connection with the litigation or for trial, a Rule 26 expert report is not necessary**." Garcia v. City of Springfield Police Department, 230 F.R.D. 247, 249 (D. Mass. 2005) (Ponsor, J.) (emphasis added); Brown v. KFC Corporation, 2007 WL 7055476, 4 (D. Mass. 2007) (Bowler, M.J.), Rutkowski v. Providence College, 2006 U.S. Dist. LEXIS 86182 (D.R.I. 2006), Sprague v. Liberty Mutual Insurance Co., 177 F.R.D. 78, 81 (D.N.H. 1998) ("The majority rule provides that [expert reports] are not required as a prerequisite to a treating physician expressing opinions as to causation, diagnosis, prognosis, and extent of disability where they are based on the

treatment."); see also Gomez v. Rivera Rodriguez, 344 F.3d 103, 113 (1st Cir. 2003) (the Advisory Committee Notes specifically referred to treating physicians as being the type of witness who may have expert opinions but who need not submit an expert report). In Gomez, Judge Selya concluded for the Court that "by and large courts have followed the Advisory Committee's lead and ruled that a treating physician, testifying as to his consultation with or treatment of a patient, is not an expert witness for the purpose of Rule 26." Gomez, supra.

Not requiring treating physicians and non retained experts to provide reports when opining on causation, recognizes that it is difficult or impossible for parties to get a Rule 26 report from a treating physician or other non retained experts. Because treating physician are not hired and under the control of the attorney, like a doctor for a F.R.Civ.P 35 exam, many times a treating physician refuses to do a report and/or flatly refuses to have any involvement in litigation. In fact, Judge Ponsor acknowledged exactly this point in Garcia. Garcia, supra at 249. By not requiring expert reports for treating physicians on issues of causation, diagnosis and prognosis, important medical evidence from witnesses that have been with the injured party from the beginning is allowed to be presented at the time of trial. Plaintiff's would be severely prejudiced by not letting treating physicians testify at trial simply because they would not produce a report.

Since August 27, 2013, Defendant was aware of treating doctors who would testify at trial in response to Interrogatory #25 which asked about experts. *Exhibit W*. Dr. Katz and five other doctors were identified. In fact, a day later, Attorney Ward questioned the Plaintiff at his deposition regarding his treatment with Dr. Katz and Plaintiff testified that the Dr. Katz said he was disabled and could not got out fishing. *Exhibit V*. Dr. Katz has regularly seen the Plaintiff over the course of his treatment and is still treating the Plaintiff for his injury.

All doctors identified in the Plaintiff's designation have been treating the plaintiff for his ailments since he was injured and some doctors even before his injury. These Doctors are not hired guns retained for the purpose of examining the Plaintiff for litigation. Dr. Katz's and the other doctors identified will be based upon information which he acquired during the course of his treatment of the Plaintiff.

Since August 27, 2013, Defendant was aware that the treating physicians would testify as experts. At any time, the Defendant could have done an IME and still could as Attorney Latti indicated she would produce the Plaintiff for an IME at anytime and but Defendant has failed to do so more than likely to argue prejudice in its Motion. *Exhibit Z*. However, after review of the facts, it is clear there is no prejudice to the Defendant.

The First Circuit in <u>Downey,</u> and District court precedent, the Advisory Committee Notes to F.R.Civ.P. 26(a)(2), the December 2010 amendments to the Fed.R.Civ.P. 26(a)(2) and the 2010 Advisory Committee Notes to F.R.Civ.P. 26(a)(2) allow expert opinion testimony on the issue of causation, diagnosis, prognosis (without a Rule 26 report) from non-retained fact witnesses of treating physicians. Based on the foregoing, this Honorable Court should deny the Defendant's Motion and allow Plaintiff's treating physicians to testify.

## IV.  Defendant's Violations of Local Rule 5.3

In Defendant's motion, the Defendant's has violated the Plaintiff's privacy. The Defendant has attached medical records, Exhibit C, which is violation of HIPAA as the Defendant has posted the information on a public website. Even Exhibit A is a public disclosure of private medical information which Defendant did not have permission to disclose.

Additionally, Exhibit C is in violation of L.R. 5.3. The Defendant misrepresented to the to the Court that he complied with Local Rule 5.3 because when he filed the document, in the opening screen he had to click yes that "I understand that, if I file, I must comply with redaction rules. I have read this notice." Exhibit 3 does not comply in that it contains Plaintiff's date of birth and personal information. Yesterday, Attorney Latti asked Attorney Regan to take immediate measures to remove the information but nothing has been filed by Defendant. *Exhibit BB*. Therefore, Plaintiff is requesting that Exhibit A and C of Defendant's motion is filed under seal.

WHEREFORE, the Plaintiff respectfully requests that this Honorable Court deny Defendant Brava Fishing Corp.'s Emergency Motion for a Protective Order and Motion in Limine to Preclude Plaintiff's Expert Witnesses and take whatever action necessary to protect confidential information in Exhibit A and C of Defendant's motion from being disclosed.

Respectfully submitted for the Plaintiff,
ARMANDO CASACA, by his attorney,

/s/ Carolyn M. Latti
CAROLYN M. LATTI
BBO 567-394
Latti & Anderson LLP
30-31 Union Wharf
Boston, MA 02109
(617) 523-1000
clatti@lattianderson.com

Dated: March 19, 2014